## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

David J. Bonham,           )
    Plaintiff,              )
                      )
v.                         )          1:10cv798 (CMH/IDD)
                      )
Eddie L. Pearson, et al.,  )
    Defendants.             )

[Clerk's stamp] FILED   SEP - 9 2013   CLERK U.S. DISTRICT COURT   ALEXANDRIA, VIRGINIA

### MEMORANDUM OPINION

David J. Bonham, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging unconstitutional conditions of confinement and deliberate indifference to his serious medical needs. Plaintiff has submitted a request to proceed in forma pauperis in this action. After review of plaintiff's initial complaint, an order was entered explaining deficiencies in the claims asserted, and plaintiff was allowed an opportunity to particularize and amend his allegations, to state a claim for which § 1983 relief is available. After review of the initial and amended complaints,[1] the claims must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[2]

---

[1] Although plaintiff was cautioned in the order allowing him to particularize and amend his allegations that the amended complaint would serve as the sole operative complaint in the action, Dkt. 8 at 4, both the initial and amended complaints have been reviewed and considered here in deference to plaintiff's pro se status.

[2] Section 1915A provides:

    (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

    (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

## I. Plaintiff's Allegations

Plaintiff alleges that during his incarceration at Powhatan Correctional Center ("PCC"), his right to be free of cruel and unusual punishment was violated because he was confined for eight months in a segregation cell that contained "large amounts of dried bird feces." Plaintiff further alleges that breathing the air in the cell caused him to suffer numerous ailments, to which medical staff at the prison were deliberately indifferent. The defendants named in connection with the claim regarding the conditions of plaintiff's confinement are Warden Eddie L. Pearson, Acting Safety Officer Sgt. C. Davis, and Housing Supervisor Sgt. J. C. White, all of whom allegedly had personal knowledge of the condition of plaintiff's cell but failed to act. The defendants named in connection with plaintiff's claim of deliberate indifference are Dr. Mark Amenette and Nurse Susan Felts. As relief, plaintiff seeks monetary damages.

## II. Standard of Review

Pursuant to 28 U.S.C. § 1915A(b)(1), a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

---

(1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

2

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III. Analysis

A. Conditions of Confinement

Plaintiff alleges that the conditions under which he was confined at PCC were unconstitutional because his cell contained bird feces. However, review and consideration of the exhibits plaintiff has supplied belie his assertion. They reveal that on June 24, 2009, plaintiff

3

submitted an Informal Complaint stating that "on 6/24/09 [he] was moved from Cell D-10 to cell D-1 by Sgt. J. C. White due to dried bird feces in Cell D-10." Compl., Ex. 5, "Grievance # 4." A lieutenant whose signature is illegible responded that he spoke with Sgt. J. C. White about plaintiff's concerns, and Sgt. White stated that went into the back of plaintiff's cell and that "there were no bird droppings in the back of the cell." However, he did observe "a lot of dried toilet paper on the window that was removed." Id. On July 8, 2009, plaintiff filed an informal grievance stating that on June 24, he was moved from cell D-10 to cell D-1 by Sgt. White due to the presence of dried bird feces in his cell. According to plaintiff, Sgt. White "got up on the toilet and looked into the 'utility area' in the back of the cell where the dried bird feces had accumulated, and then decided to move plaintiff to a new cell so the feces could be cleaned up." Plaintiff requested that action be taken in the form of an admission that there were dried bird feces in the "utility arm" of his cell. Compl., Ex. 5, "Grievance # 4," Log No. 410-00787. On August 3, 2009, the Warden determined plaintiff's grievance to be unfounded:

> An investigation into your complaint reveals per Sgt. J. C. White there were no bird feces in your cell or the utility area of your cell. Sgt. J. C. White did advise that the reason for your move was due to your continuous complaints of bird feces. This allowed the utility area, which is located in the back of the cell to be inspected. Due to security reasons this could not be done while you were housed in the cell; therefore you were moved. Upon inspection by Sgt. White there were no trace [sic] of bird feces found anywhere within the cell. However, Sgt. White did observe and clean dried toilet paper as stated in the Informal Complaint. Therefore, in accordance with Operating Procedure 'Sanitation and Maintenance' all policies have been followed.

Id., Offender Grievance Response Level I. Plaintiff appealed the Warden's response, and on August 24, 2009, the Regional Director upheld the Warden's decision and determined plaintiff's

claim to be unfounded. Id., Offender Grievance Response Level II.

On August 3, 2009, plaintiff submitted an inmate request form, asking whether Acting

Safety Officer Sgt. Davis had any "formal safety officer, OSHA, and federal training or

certification." Compl., Ex. 5, "Grievance # 5." On August 3, plaintiff was informed that he was

not entitled to that information. Id. On July 17, plaintiff submitted an informal complaint in

which he asserted that if the acting and permanent safety officers at PCC had been doing their

jobs by inspecting the "utility area" in plaintiff's cell, there would have been no bird feces to

"cause [him] problems." On August 4, Mr. Hunnel responded that Sgt. White had inspected the

areas in question and found no feces, "bird or otherwise," to be present in the cell. Id. Plaintiff

then filed a grievance in which he reiterated his belief that dried bird feces were present in his

cell because the safety officers at PCC were not doing their jobs. Compl., Ex. 5, "Grievance #

5," Log No. 410-00807. Plaintiff demanded to know why the "utility area" of his cell had not

been inspected previously because it contained plumbing and fire sprinkler equipment. Id. On

August 21, 2009, the Warden determined plaintiff's grievance to be unfounded, as follows:

> The Institutional Ombudsman did not meet with you as you would
> not speak with her regarding this or any other grievance.
>
> An investigation into your complaint reveals that all inspections have
> taken place as outlined per policy. On several occasions your cell
> was checked by "M" Building staff after your claim of dried bird
> feces. It si noted that Sgt. J. C. White moved you from one cell to
> another in order to inspect the cell himself. He even got over in the
> utility area at the back of the cell. No bird feces were found in your
> cell or the entire "M" Building. Therefore, in accordance with
> Operating Procedure "Sanitation and Maintenance" policy has been
> followed. You have not provided any evidence to substantiate your
> claim.

Id., Offender Grievance Response Level I. Plaintiff appealed the Warden's response, and on

September 10, 2009, the Regional Director upheld the Warden's decision and determined

plaintiff's claim to be unfounded. Id., Offender Grievance Response Level II.

To establish a claim for cruel and unusual punishment due to conditions of confinement

that violate the Eighth Amendment, a plaintiff must show (1) an objectively serious deprivation

of a basic human need, that is, one causing serious physical or emotional injury, and (2) that

prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834

(1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991).   To meet the first prong, plaintiff must

allege facts sufficient to show that the condition complained of was a "sufficiently serious"

deprivation of a basic human need. Farmer v. Brennan, 511 U.S. 825, 825 (1994) (citing Wilson,

501 U.S. at 298).   Only extreme deprivations will make out an Eighth Amendment claim, and it

is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his

confinement was so grave that it violated contemporary notions of decency and resulted in

serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992);

Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993).   To meet the second prong, plaintiff

must allege facts sufficient to show that defendants were deliberately indifferent, that is, that they

knew of facts from which an inference could be drawn that a "substantial risk of serious harm,"

was posed to her health and safety, that they drew that inference, and then disregarded the risk

posed. Farmer, 511 U.S. at 837.

When plaintiff's exhibits are considered, as they appropriately may be, Gulf Ins. Co., 313

F. Supp. 2d at 596, they demonstrate that plaintiff can satisfy neither of these elements. The

exhibits reflect that in response to plaintiff's complaints of bird feces in his cell, PCC officials

moved plaintiff to a different cell so that an investigation could be conducted. The inspection of

plaintiff's original cell revealed the existence of no feces, "bird or otherwise," either in the cell or in the entire building where plaintiff was housed.  Compl., Ex. 5, "Grievance # 5," Log No. 410-00807, Offender Grievance Response Level I..  Plaintiff provided no evidence to substantiate his contrary claim.  Id.  Viewed against this backdrop, plaintiff's present conclusory insistence that bird feces were present in his cell for eight months fails "to raise a right to relief above the speculative level."  Cf. Twombly, 550 U.S. at 55. Since plaintiff's own exhibits demonstrate that he cannot show either that the conditions under which he was housed at PCC amounted to an objectively serious deprivation of a basic human need, or that defendants were deliberately indifferent to that need, his claim that the Eighth Amendment was violated by the conditions of his confinement must be dismissed for failure to state a claim.

   B. Deliberate Indifference

   In the second portion of his claim, plaintiff alleges that he suffered from various ailments to which prison medical staff were deliberately indifferent. Specifically, plaintiff alleges that his "inhalation of dried bird feces" caused him to experience "some sort of rash ... breaking out on [his] hands" and "sores inside [his] nose." Am. Compl. at 1-2.  Plaintiff also suffered "a dry cough, sore throat, headaches and some nausea." Id. at 2.

   Plaintiff's exhibits reveal that on June 24, 2009, he submitted an informal complaint stating that he had submitted "a couple of" sick call requests to Nurse Felts and she responded that he should "pick one."  Plaintiff stated that he had been seen on sick call for multiple problems in the past, and he asserted that being told to "pick one" amounted to a denial of medical attention and treatment. Compl., Ex. 5, "Grievance #1."  Nurse Watson responded that a nurse "addresses the most crucial complaint at the time," and that once plaintiff is referred to the

7

doctor he could bring other issues to the doctor's attention. Id.  On June 30, plaintiff filed a

regular grievance stating that from June 5 through June 24 he submitted "at least 3" sick call

request forms regarding three different issues: (1) "blister like places breaking out on [his] hand

s and feet," frequent nosebleeds, sore throat and dry cough; (2) blood tests for hepatitis C and

HIV; and (3) acne treatment cream for his face. Id., Log No. 410-00777.  Plaintiff pointed out

that it "was not [his] fault" that he was not seen sooner for these issues, and that Nurse Felts'

instruction that he should "pick one" meant that "in essence [he] was being denied medical

treatment" at sick call for the remainder of his issues. On July 15, the Warden responded:

> An investigation into your complaint reveals per the Medical
> department you submitted a sick call request on June 5, 2009 and two
> requests on June 23, 2009. You were not seen until June 22, 2009
> and then again on June 24, 2009. Upon the Nurse seeing you on June
> 24, 2009 you ere advised to pick one issue as you had submitted two
> forms on June 23, 2009. The nurse allowed you to discuss your most
> crucial issue out of the two and then advised you that you could speak
> with the doctor about all your issues. However, the sick call form
> submitted on June 5, 2009 was not triaged properly thus causing you
> not to be seen until 17 days later. In accordance with Operating
> Procedure #720.1, 'Access to Medical Services,' request for "sick
> call" are triaged by the night charge nurse. Non-emergency requests
> will be scheduled for the appropriate level of sick call within 72 hours
> of receiving the request. (96 hours on weekends). Therefore, policy
> was not followed. ...
>
> Your grievance is FOUNDED based upon the investigation.
>
> Institutional remedy will be that a copy of this grievance will be
> provided to the Medical Administrator who will ensure that
> appropriate training and instruction is given with regard to scheduling
> sick call appointments. Corrective action steps and any related
> documentation will be provided to the grievance office within 30 days
> of my signature.
>
> Inmate remedy is that you ill be scheduled for any sick call request(s)
> according to policy.

8

Id., Offender Grievance Response Level I. On July 27, the Health Services Director of the

Virginia Department of Corrections ("VDOC") concurred with the Warden that plaintiff's

grievance was founded, and stated that "[t]he medical department will be notified and educated

on the importance of offenders being seen within the proper time frame as well as the policy and

procedures." Id., Offender Grievance Response Level II.

Meanwhile, on June 25, plaintiff filed another informal complaint, this time stating that

although he told Nurse Felts about the dried bird feces in his cell and the unspecified "physical

symptoms" plaintiff believed were due to the feces, "she did nothing about it." Plaintiff asserted

that this occurred "at Nurse's Sick Call on 6/24/09." Compl., Ex. 5, "Grievance #2." Nurse

Watson responded, "There is no sick call request on record. If you are having symptoms, the

policy is to complete one." Id. On July 1, plaintiff submitted a grievance stating that he informed

Nurse Felts "in front fo Dr. Amenette at Nurse's Sick Call on 6/24/09" that there were dried bird

feces in his cell that were causing him to "be sick" and "break out in sores." As relief, plaintiff

requested "to be tested to make sure I am not sick due to dried bird feces." Id., Log No. 410-

00779. On July 15, the Warden determined plaintiff's grievance to be unfounded:

> An investigation into your complaint reveals that according to Nurse
> Felts you advised her of break outs occurring on your hands. You
> were ordered hand cream and referred to the doctor. Upon seeing the
> doctor you were prescribed a stronger hand cream. Nurse Felts stated
> you were rambling on about bird feces in your cell, however when
> asked how you were being affected health wise you continued to
> speak about your hands breaking out. She indicated that you made no
> mention of any other problems. Therefore, in accordance with
> Operating Procedure #718, "Access to Medical Services," the Sick
> Ca;; Nurse will refer inmates to the physician as needed after medical
> screening is completed. The physician will evaluate the inmate's
> medical complaint and render treatment, and/or refer for special
> consultation if determined necessary for follow up care. All policies

9

have been followed.

Id., Offender Grievance Response Level I. On July 27, VDOC's Health Services Director

partially disagreed with the Warden and determined that plaintiff's grievance was founded as to

the time frame in which he was seen by the doctor. Specifically, plaintiff requested to see a

doctor on June 5 but was not seen until June 22, so "policy was incorrectly applied." As relief,

PCC's medical department would be notified and educated on the importance of offenders being

seen within the proper time frame. Id., Offender Grievance Response Level II.

However, in a separate response to plaintiff's allegations regarding the lack of treatment

for his alleged ailments dated August 12, 2009, VDOC's Health Services Director rejected

plaintiff's grievance, stating:

> Your grievance appeal complaint has been reviewed along with the response for Level I and your complaint that you complained of bird feces making you sick and your complaints were ignored.
>
> Based on the information provided and the upon further investigation, I concur with the Level I response and hand determined your grievance **UNFOUNDED. I have reviewed your medical file from March 23, 2009 thru July 22, 2009. You have been seen numerous times in the medical department for various complaints. There is no specific mention of bird feces in your cell making you sick. You have been treated for rash, sore throat, itching, seasonal allergies, back/wrist/leg pain, etc. There is no evidence that the complaints presented in medical were not properly addressed.**

Compl., Ex. 5, "Grievance #3, Offender Grievance Response Level II, Log No. 410-00779,

emphasis original.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff

must allege facts sufficient to show that jail officials were deliberately indifferent to a serious

medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904

F.Supp. 487, 492 (E.D.Va. 1995). To establish that inadequate medical treatment rises to the

level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful

to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Va.

Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct

elements to state a claim upon which relief can be granted. First, he must allege a sufficiently

serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining

that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582

F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is

sufficiently serious). Second, he must allege deliberate indifference to that serious medical need.

Second, he must allege deliberate indifference to that medical need. Under this second prong, an

assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment

violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless

disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986);  Miltier v.

Beorn, 896 F.2d 848, 851 (4th Cir. 1990). To do so, he must demonstrate that defendants'

actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to

be intolerable to fundamental fairness." Id. (citations omitted). Importantly, a prisoner's

disagreement with medical personnel over the course of his treatment does not make out a cause

of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318,

319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

At this juncture, it is apparent that plaintiff's claim of inadequate medical care fails to

meet the requirements for an actionable Eighth Amendment violation. As to the first component

11

of a Eighth Amendment claim, a condition is sufficiently serious to merit constitutional protection if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The specific ailments plaintiff alleges here - "some sort of rash ... on [his] hands," "sores inside [his] nose," a dry cough, sore throat, headaches and nausea - are not sufficiently serious even in the aggregate to warrant constitutional protection. However, even assuming *arguendo* that plaintiff's alleged conditions could be considered sufficiently serious to satisfy the first element of an Eighth Amendment claim, his exhibits contradict his assertion that defendants were deliberately indifferent to his medical needs. The fact that plaintiff was seen "numerous times in the medical department for various complaints" including "rash, sore throat, itching, seasonal allergies, back/wrist/leg pain, etc," and that during that time he never mentioned bird feces in his cell making him sick, see Compl., Ex. 5, "Grievance #3, Offender Grievance Response Level II, undermines any suggestion that prison officials were deliberately indifferent to his medical needs, either through actual intent or reckless disregard. Cf. Miltier, 896 F.2d at 851. To the extent that some of plaintiff's requests to be seen by medical personnel were not answered within the time frames prescribed by VDOC"s Operating Procedures, such lapses amounted at worst to negligence and do not support an Eighth Amendment claim. Miltier, 896 F.2d at 851; see Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (delay in medical treatment amounts to a constitutional violation only if it results in "substantial harm" to the patient). Thus, plaintiff's claim of deliberate indifference to his serious medical needs also must be dismissed for failure to state a claim.

## IV. Conclusion

For the foregoing reasons, plaintiff's complaint states no claim for violation of his rights

under the Eighth Amendment, and must be dismissed for failure to state a claim.  28 U.S.C. § 1915A(b)(1). An appropriate Order shall issue.

Entered this ____9th____ day of ____Sept_____ 2013.


_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia


13